IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**TRIPLE H ENTERPRISES, INC.,**
**Employer Below, Petitioner**

**v.) No. 25-ICA-433**        (JCN: 2024025287)

**BRYANT REED,**
**Claimant Below, Respondent**

**FILED**
**April 7, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Triple H Enterprises, Inc., ("Triple H") appeals the October 14, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent Bryant Reed timely filed a response.[1] Triple H did not file a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which rejected the claim.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Mr. Reed, a laborer working for Triple H, slipped and fell on a containment barrier while carrying a heavy iron pipe and reported injuries to his hips, legs, and back. Mr. Reed completed an Incident Statement on March 19, 2024, which, in part, indicated that on the previous night of March 18, 2024, he had what he described as a charley horse on his right leg between his hip and knee. He indicated that the next morning he continued to experience discomfort. He recalled that while at work on March 19, 2024, it was hard for him to walk, especially while carrying things. Mr. Reed indicated that he had health insurance and did not need Triple H to pay any medical costs. Mr. Reed signed a weekly timesheet for the pay period of March 15, 2024, to March 21, 2024, indicating that he was off work due to an injury on March 20, 2024, and that he was off on March 21, 2024.

On April 17, 2024, Mr. Reed presented to Sistersville General Hospital, and reported bilateral pelvis, hip, and thigh pain for greater than one month. Siva Murthy, M.D., noted that Mr. Reed indicated that he slipped about a month ago, outstretched his right leg, fell, and had ongoing pain in both lateral hips and thighs. The mechanism of injury was

---

[1] Triple H is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq. Mr. Reed is represented by Sandra K. Law, Esq.

1

described as bending/twisting. Mr. Reed thought that the pain might improve on its own, but it did not. Dr. Murthy opined that Mr. Reed likely had a strain of his vastus laterallis muscles on both sides. Mr. Reed was placed on light duty until an orthopedic evaluation scheduled for April 25, 2024.

Mr. Reed completed an Employees' and Physicians' Report of Occupational Injury or Disease form dated May 17, 2024. He indicated that he injured his hips, legs, and back on the morning of March 17, 2024, while at work. Mr. Reed indicated that the injury occurred at the Alpha pad outside of Caldwell. Dr. Murthy completed the physicians' portion of the form on May 20, 2024, and he described the injury as a muscle strain and mild bulging disc, which were a direct result of an occupational injury. The date of initial treatment was listed as April 17, 2024.

By order dated September 10, 2024, the claim administrator rejected Mr. Reed's claim. The claim administrator concluded that the disability that Mr. Reed complained of was not due to an injury or disease received in the course of and as a result of Mr. Reed's employment. Mr. Reed protested this order.

On January 31, 2025, Mr. Reed presented to EZ Care with right hip pain that radiated to the right knee, and Ashley Dierkes, PA-C, examined him. There were no abnormalities of the right or left lower extremities upon physical examination. PA-C Dierkes noted that Mr. Reed reported a right hip injury about a year ago when he was carrying a heavy pipe and slipped. Mr. Reed indicated that the pain returned two days ago and felt the same as before but denied a new injury. He was diagnosed with a strain of muscle, fascia, and tendon of right hip.

Mr. Reed returned to EZ Care on February 5, 2025, and reported constant right hip pain. Kirby Fazio, NP, diagnosed pain in joint, and gave an injection. On the same date, Mr. Reed underwent an x-ray of his right hip and pelvis at WVU Wetzel County Hospital, which revealed avascular necrosis of both femoral heads. Mr. Reed also underwent an x-ray of the lumbar spine, which revealed L5 spondylosis with Grade 1 L5-S1anterolisthesis and mild disc space narrowing. Mr. Reed followed up with PA-C Dierkes on February 10, 2025, and reported additional right hip pain. PA-C Dierkes again assessed Mr. Reed with pain in joint and gave an injection.

On February 24, 2025, Mr. Reed underwent an MRI of the pelvis, which revealed avascular necrosis of bilateral femoral heads with suspected early subchondral collapse. Stress injuries of the right greater than left femoral necks with no discrete fracture line were seen. A lumbar MRI revealed degenerative changes of the lumbar spine resulting in moderate neural foraminal narrowing at L5-S1.

Mr. Reed was deposed regarding his claim on February 26, 2025, and he testified that his job consisted, in part, of dismantling and moving large iron pipes, which weighed

approximately fifty to one hundred pounds. According to Mr. Reed, on the date of the injury he was walking across a pad with a large iron pipe balanced on his shoulder, when he slipped on a containment barrier with his right foot, his right leg went outwards, and he fell to the ground. Mr. Reed stated that there were frosty conditions on the date of the workplace injury, and the containment barrier was slippery. He recalled that he did not hit his head, but he felt a shock impact and had to wait a few seconds before he was able to get up without assistance. After the injury, Mr. Reed recalled that he was limping, couldn't walk straight, and initially thought that he had pulled a muscle. Mr. Reed completed a safety incident report shortly after the injury. The following day, he took time off work due to his injury.

Mr. Reed recalled that he completed an incident report soon after the injury. He indicated that on March 18, 2024, he put eight hours of injury pay into the app used for timekeeping by Triple H. Mr. Reed was taken off the schedule for the next couple of weeks for low earnings income. Mr. Reed testified that he went to the emergency room at Sistersville General Hospital about one month after the injury, because he was having difficulty walking on level ground without a limp. He recalled that he was seen at EZ care regarding his leg and hip pain, for which he was treated with injections and prescribed Oxycodone, which he did not take for long. Mr. Reed denied any prior hip or leg problems other than a sprained ankle years ago for which he wore a brace. Mr. Reed indicated that he lost his job with Triple H soon after going to the emergency room, and he began doing additional physical therapy to get back to work.

Roy Carrington completed an affidavit dated August 1, 2025. He indicated that he was working with Mr. Reed on March 18, 2024, and March 19, 2024, and stayed in a hotel room with Mr. Reed on these dates. Mr. Carrington indicated that Mr. Reed woke him up at midnight to take a shower, and again at 2:00 a.m. doing jumping jacks. At 6:00 a.m., Mr. Carrington was awoken by Mr. Reed taking another shower. Both men rode together to the job site, and Mr. Reed talked about quitting his job. Mr. Carrington indicated that Mr. Reed said he had a charley horse after lunch, and he did not work the rest of the day.

Corey Boyce completed two separate affidavits dated August 1, 2025, and August 7, 2025. Mr. Boyce indicated that on March 18, 2024, and March 19, 2024, Mr. Reed was working for Triple H in Ohio. Mr. Boyce received a call from Mr. Reed, who said that he had a charley horse in one of his legs. Mr. Boyce advised Mr. Reed to sit in his truck and take it easy. After everyone went home for the evening, Mr. Boyce spoke with Mr. Carrington, who shared a hotel room with Mr. Reed. Mr. Carrington told Mr. Boyce that Mr. Reed woke him up multiple times throughout the night by taking multiple showers and doing jumping jacks. After the incident, Mr. Reed told Mr. Boyce that he was fine to work and resumed work until May 10, 2024, after which he never returned to work. In his August 7, 2025, affidavit, Mr. Boyce indicated that he does scheduling for Triple H, and that his documentation showed that Mr. Reed did not work on March 17, 2024. Mr. Reed's timesheets showed that he was off on that date as well.

By order dated October 14, 2025, the Board reversed the claim administrator's order and held the claim compensable for bilateral vastus lateralis muscle strain. The Board found that Mr. Reed met his burden of establishing that he sustained a compensable injury in the course of and resulting from his employment. It is from this order that Triple H now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Triple H argues that the Board's decision is clearly wrong because Mr. Reed did not immediately report his injury despite completing an incident report. Further, Triple H argues that despite Mr. Reed's testimony that he reported the injury to the employer, there is no evidence of any written or verbal notice of a slip and fall injury. We disagree.

Three elements must coexist in compensability cases: (1) a personal injury, (2) received in the course of employment, and (3) resulting from that employment. *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970).

The Board concluded that Mr. Reed sustained an injury while at work on March 18, 2024, and that he completed an employer's incident report soon after the incident

4

occurred.[2] Further, the Board found that Mr. Reed's description of the injury is supported by the timesheets submitted by Triple H, which indicated that he took off work on March 19, 2024, due to an injury. Mr. Boyce's affidavit also confirmed that Mr. Reed took off work on this date due to an injury. Regarding Mr. Reed's decision to seek medical treatment on April 17, 2024, the Board noted his testimony that he had a pulled muscle that he thought would get better without treatment, but when it did not improve, he sought treatment. The Board found that Mr. Reed's reason for waiting to seek medical treatment is credible. We will defer to the Board's credibility determinations and weighing of the evidence. *See Martin v. Randolph Cnty. Bd. of Educ.,* 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence.").

Upon review, we find no error in the Board's conclusions. As the Supreme Court of Appeals of West Virginia has set forth, [t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order and finding that Mr. Reed's claim is compensable for bilateral vastus lateralis muscle strain.

Accordingly, we affirm the Board's October 14, 2025, order.

Affirmed.

**ISSUED:** April 7, 2026

---

[2] W. Va. Code R. § 85-1-3.1 (2009) provides that immediately after sustaining an occupational injury, a claimant should seek necessary medical care, as soon as practical give notice to the employer, and file a workers' compensation claim. Failure to immediately give notice to the employer weighs against a finding of compensability. . .and dilutes the credibility and reliability of the claim. Notice provided to the employer within two working days of the injury shall be deemed immediate notice. *Provided*, that under no circumstances shall the fact that notice of an occupational injury was provided by the claimant later than two (2) working days from the time of injury be the sole basis for denial of a claim.

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White